**Michael Patrick MOORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71972.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 16, 1996.

Rehearing Denied Dec. 18, 1996.

Walter M. Reaves, Jr., West, for appellant.

Sandy S. Gately, District Attorney, Gatesville, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

MALONEY, Judge.

Appellant was convicted of capital murder under Tex. Penal Code Ann. § 19.03(a)(2). The jury made findings on the special issues under Tex.Code Crim. Proc. Ann. art. 37.071 § 2 and the trial court imposed a sentence of death. Direct appeal to this court is automatic. Tex.Code Crim. Proc. Ann. art. 37.071, § 2(h). Appellant raises nine points of error. We affirm.

In his fifth point of error appellant alleges the evidence was insufficient to support the jury's affirmative answer to Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b)(1), the future dangerousness special issue. Article 37.071, § 2(b)(1) provides that the jury decide:

Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society . . .

Appellant argues the State's evidence was legally insufficient because the circumstances of the offense were not "particularly aggravating" and he has no prior convictions for violent offenses. The State contends the jury's affirmative answer is supported by the facts of the offense, evidence of appellant's extraneous offenses, and testimony of an expert witness who stated that appellant poses a continuing danger to society.

In conducting a legal sufficiency review, we determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the challenged elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Nelson v. State*, 848 S.W.2d 126, 131 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 830, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993). The jury is the sole judge of the weight of the evidence and may choose to believe all, some, or none of it. *Chambers v. State*, 805

S.W.2d 459, 461 (Tex.Crim.App.1991). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986). In answering the special issues raised under art. 37.071 the jury may consider evidence admitted at both the guilt-innocence and punishment stages of trial. *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Crim.App. 1987). The jury may look at several factors in its review of future dangerousness including, but not limited to:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

2. the calculated nature of the defendant's acts;

2. the forethought and deliberateness exhibited by the crimes's execution;

4. the existence of a prior criminal record, and the severity of the prior crimes;

5. the defendant's age and personal circumstances at the time of the offense;

6. whether the defendant was acting under duress or the domination of another at the time of the offense;

7. psychiatric evidence; and

8. character evidence.

*Barnes v. State*, 876 S.W.2d 316, 322 (Tex. Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Viewing the evidence in the light most favorable to the jury's finding, the record supports the jury's verdict.

The facts of the crime are as follows. Armed with a gun and a knife, appellant entered the victim's home at about 2:20 am and headed toward the bedrooms. At the time he entered the home, appellant knew it was occupied. He was dressed in black so that he would not be seen in the dark. Appellant encountered the victim and a struggle ensued between them. The victim was stabbed several times by appellant who then dropped his knife. The victim was screaming so appellant drew his revolver and shot her. Because of the number and depth of the wounds the victim received, the medical examiner characterized the murder as "overkill" and "particularly brutal." The victim's

fourteen year old son discovered her body. Appellant then fled the scene of the crime. Shortly thereafter, a police officer spotted appellant driving without his headlights. The officer attempted to get appellant to pull over, but appellant led the police on a high-speed car chase followed by a pursuit on foot. After appellant was apprehended, the police found a .22 caliber pistol and 50 rounds of ammunition in appellant's car. While the facts of the crime itself are perhaps not alone sufficient to support an affirmative finding to the future dangerousness special issue, additional evidence introduced at trial does support such a finding.

At the punishment phase the State introduced records from the Conners Children's Home, where appellant resided during part of his childhood, containing information about appellant when he was a child. The records indicate appellant twice set fire to his house and once to the Children's Home, threatened to kill his parents and blame their deaths on his younger brother, and tried to stab his younger brother with a pair of scissors. As a child, appellant continuously exhibited violent and improper sexual behavior. While serving in the Navy, appellant was on unauthorized absence three times and was convicted of grand larceny. The State also introduced appellant's notebook entitled "The Girls of Copperas Cove" in which he listed the names and addresses of 300 teenaged girls of Copperas Cove. Many of these girls including T.R., the victim's daughter, testified that appellant stalked, harassed, and threatened them. The State introduced evidence of various extraneous offenses, including several burglaries which often took place while the victims were home, perpetrated against the girls listed in the notebook. Letters that appellant wrote to several of the girls in which he threatened to rape them were introduced into evidence, including one letter written to a junior high student threatening to rape her and her best friend. Appellant's notebook also contained the license plate numbers of a Coryell County Justice of the Peace and a Copperas Cove police sergeant. Appellant testified that the notebook was not in its "final form." On direct examination, appellant admitted to being involved in a physical altercation while in jail.

The State also called Dr. Coons, a psychiatrist, to testify to appellant's future danger to society. He noted appellant's childhood displays of anger and violence and his lawless behavior. Dr. Coons reviewed the State's files and records of appellant, as well as appellant's psychological and psychiatric records, and was presented a hypothetical question embodying the significant facts of the case. Based on this information, Dr. Coons stated that appellant lacks a conscience, is a continuing threat to society, and would continue to commit criminal acts of violence. He stated violence and anger were well integrated into appellant's personality and that appellant's behavior would carry over into prison society. Dr. Coons testified that appellant would be manipulative, vindictive, and a threat to smaller prisoners.

This evidence is sufficient for a rational juror to find affirmatively that appellant is a continuing danger to society. **His fifth point of error is overruled.**

In points of error one through three appellant avers art. 37.071 is unconstitutional. In point one, appellant argues the lack of appellate review of the jury's answer under art. 37.071, § 2(e), the mitigation special issue, allows an arbitrary and capricious imposition of the death penalty. *See Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). He contends appellate review is necessary to prevent the jury's "unfettered discretion as to when it will impose the death penalty." Appellant complains "there is no procedure in place for the jury to specify what mitigating circumstances it may find to exist;" an appellate court would have no means of knowing what the jury's decision is based upon. This Court has recently rejected arguments indistinguishable from appellant's. *See, e.g., McFarland v. State,* 928 S.W.2d 482 (Tex.Crim.App. 1996), *Colella v. State,* 915 S.W.2d 834 (Tex.Crim.App.1995), and *Lawton v. State,* 913 S.W.2d 542 (Tex. Crim.App.1995); *Hughes v. State,* 897 S.W.2d 285, 294 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995).

We have held:

In Texas, mitigating evidence is admissible at the punishment phase of a capital murder trial. Once admitted, the jury may then give it weight, if in their individual minds it is appropriate, when answering the questions which determine sentence. However, "[t]he amount of weight that the factfinder might give any particular piece of mitigating evidence is left to 'the range of judgment and discretion' exercised by each juror."

*Colella,* 915 S.W.2d at 844 (*citing Banda v. State,* 890 S.W.2d 42, 54 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995)). "Mitigating evidence" is defined as "evidence that a juror *might* regard as reducing the defendant's moral blameworthiness." Tex.Code Crim. Proc. Ann. art. 37.071, § 2(f)(4) (emphasis added). Each juror individually determines what evidence, if any, mitigates against the just imposition of the death sentence. *Banda,* 890 S.W.2d at 54. "Because the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror, we decline to review the evidence for sufficiency." *Colella,* 915 S.W.2d at 845. Whether to give particular evidence a mitigating effect is within the prerogative of individual jurors; thus, such a determination is unreviewable.

In his second point, appellant argues art. 37.071 constitutes "cruel and unusual punishment because it creates the possibility that the death penalty will be arbitrarily and capriciously applied." Appellant cites Justice Scalia's concurring opinion in *Johnson v. Texas,* 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) and Justice Blackmun's dissenting opinion in *Callins v. Collins,* 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994) in which Justices Scalia and Blackmun suggest the competing requirements of the federal constitution as expressed in the narrowing requirement of *Furman* and open-ended discretion of *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) are ultimately irreconcilable.[1] We refer appellant to the more authoritative holdings in *Gregg,* 428 U.S. at 153, 96 S.Ct. at 2915–2916, *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and more recently *Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), cases in which the apparent conflicts of *Furman* and *Penry* are reconciled. *See also Lawton,* 913 S.W.2d at 558 (adopting holdings in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Jurek,* and *Tuilaepa* ).

■ Point of error three contained the same arguments appellant raised in the first two points but under the "broader protections" of the Texas Constitution. According to appellant, it is "particularly noteworthy" that where the federal constitution proscribes "cruel and unusual" punishment, the Texas constitution proscribes "cruel or unusual" punishment. TEX. CONST. art. I, § 13. Appellant offers no arguments or authority explaining the noteworthiness of the distinction and it is not self-evident. To brief adequately a state constitutional issue appellant must proffer specific arguments and authorities supporting his contentions under the state constitution, otherwise his contentions are inadequately briefed. *Narvaiz v. State,* 840 S.W.2d 415, 430 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); *Robinson v. State,* 851 S.W.2d 216, 222 n. 4 (Tex.Crim. App.1991), *cert. denied,* 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Morehead v. State,* 807 S.W.2d 577, 579 n. 1 (Tex. Crim.App.1991); Tex.R.App. P. 74 and 210. **Appellant's points of error one through three are overruled.**

■ In point of error six, appellant argues that the instructions given pursuant to art. 37.071 violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by creating the mistaken belief that ten jurors must answer the special issues "no" before a life sentence could be imposed. Appellant alleges art. 37.071, § 2(a) creates the potential for confusion among jurors because they are prohibited from being advised that their failure to agree on the special issues would result in a life sentence. We have repeatedly rejected this

---

**1.** The effect of *Furman* was to limit the class of murders subject to capital punishment. *Penry*

required that jurors be afforded a means by which to give effect to mitigating evidence.

contention. In *Davis v. State*, 782 S.W.2d 211, 222 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990), we wrote

> [W]e fail to see any relevance in informing the jurors the result of their failure to agree; this information has no pertinence to the special issues that are submitted to a jury in a capital murder case. While the information represents a correct statement of the law, it concerns a procedural matter and is not the proper subject of an instruction by the trial court or comment by the litigants. Therefore, we hold that Article 37.071[ ] did not work to deprive appellant of his due process rights and, as such, the trial·court did not err when it refused to either instruct the jury or allow appellant the opportunity to inform the jury that its failure to decide the special issues would automatically result in imposition of a life sentence. [citations omitted]

This reasoning was recently upheld in *Patrick v. State*, 906 S.W.2d 481, 494 (Tex.Crim. App.1995). *See Lawton*, 913 S.W.2d at 558–9; *Nobles v. State*, 843 S.W.2d 503, 508–9 (Tex.Crim.App.1992). "To inform the jury of the effect of its answers to the special issues is to invite the jury to avoid its statutory duty. This interferes with the jury's fact finding function." *Patrick*, 906 S.W.2d at 494. **Appellant's sixth point of error is overruled.**

 Appellant's fourth point raises his contention that the trial court erred in denying his motion to change venue out of Coryell County. Appellant alleges there existed so great a prejudice against him that a fair and impartial trial was impossible in Coryell County. *See* Tex.Code Crim. Proc. Ann. art. 31.03(a)(1). Appellant argues that pretrial publicity about his list of teenaged girls of Copperas Cove, Texas, made a fair trial impossible because he "would be faced with a jury who knew the victims or their families, and could sympathize with them." Appellant also asserts "most persons in Copperas Cove were terrified" of him, and worried that he might be released. Further, appellant suggested that the trial judge could not be fair and impartial in the face of the widespread outrage against appellant.

 In deciding whether the trial court abused its discretion in denying a motion to change venue, the reviewing court determines whether there existed such a prejudice in the community that it is doubtful that the defendant received a fair trial by an impartial jury. *Etheridge v. State*, 903 S.W.2d 1, 6 (Tex.Crim.App.1994). Extensive knowledge in the community of either the crime or the defendant, without more, is insufficient to render a trial unconstitutional. *Id.* Publicity about the case must be pervasive, prejudicial and inflammatory. *Id.* Appellant must demonstrate an "actual, identifiable prejudice attributable to that publicity on the part of members of his jury," and that the prejudicial effect has so permeated the community that the prospective jurors' prejudicial opinions cannot be set aside. *See id.* (*quoting Beets v. State*, 767 S.W.2d 711, 742–44 (Tex.Crim.App.1987) (op. on reh'g), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989)). The record does not support appellant's claims.

Appellant called various representatives from the local media to testify at the venue hearing. These witnesses testified that the pre-trial publicity had not been inflammatory or even excessive. Appellant presented no evidence at all that "most persons" in Copperas Cove were "terrified" of him and worried that he would be released from custody; to the contrary, the Sheriff of Coryell County testified that there had been no untoward concern in Copperas Cove about appellant. Appellant also produced no evidence that the jurors "knew the victims or their families, and would sympathize with them." Appellant's suggestion that the trial court was prejudiced by community outrage is unsupported by the record. Appellant produced no evidence that any of the venire harbored unshakable prejudices against appellant.

On this record we cannot hold that the trial court abused its discretion in denying appellant's motion to change venue; **his fourth point of error is overruled.**

 In points of error seven and eight, appellant argues the trial court fundamentally erred in admitting as evidence against him, records from the Conners Children's

Home and from the United States Navy. Appellant raises these arguments for the first time on appeal claiming that the records were inadmissible hearsay. Appellant concedes that no objections were raised against the admission of this evidence at trial, but argues the admission of the records was fundamental error. The State argues that the trial court did not err in admitting the challenged evidence and responds that having failed to object, appellant has waived any error.

Assuming for argument that the challenged evidence is in fact hearsay, there is no authority supporting appellant's assertion that admission of hearsay is fundamental error which can be raised for the first time on appeal. To the contrary, all existing authority holds the admission of hearsay must be preserved with a timely and specific objection to the evidence. *See* Tex.R.App. Proc. 52(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App.1991). Because appellant did not make a trial objection, he has failed to preserve his argument for appeal. Tex. R.App. Proc. 52(a). **Appellant's seventh and eighth points of error are overruled.**

■ Appellant's ninth point raises his contentions that the trial court erred in refusing to grant his motion for expert assistance in jury selection.[2] Appellant argues under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) that the trial court's refusal to appoint the requested expert denied him the opportunity to participate meaningfully in the criminal process and thus was a violation of his right to due process.

■ Appellant argues that *Ake* is not limited to the expert assistance of psychiatric experts. Although he does not cite to it in his brief, in *Rey v. State*, 897 S.W.2d 333 (Tex.Crim.App.1995), we held that *Ake* is not limited to psychiatric experts. We stated that "the necessity for the appointment under *Ake* will depend upon whether the defendant has made a sufficient threshold showing of need for the expertise...." *Rey*, 897 S.W.2d at 339. As we explained, it is crucial

that a defendant seeking appointment of expert assistance under *Ake* make a preliminary showing that the expert assistance is necessary to address a significant issue at trial. *Rey*, 897 S.W.2d at 340–43; *see Ake*, 470 U.S. at 74, 105 S.Ct. at 1091–92. We noted that "[i]n *Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n. 1, 105 S.Ct. 2633, 2636–37 n. 1, 86 L.Ed.2d 231 (1985), the Supreme Court declined to entertain a petitioner's *Ake* claim where he 'offered little more than undeveloped assertions that the requested assistance would be beneficial.'" In the instant case, appellant failed at trial, and fails on appeal, to establish that the expert assistance he sought in selecting a jury was essential to developing and presenting his defense, without which his trial was rendered fundamentally unfair. While appellant's assertion that the selection of a fair and impartial jury is crucial to a fair trial is correct, he presents no convincing argument that the expert assistance he sought was necessary to the selection of a fair jury. Indeed, appellant offered nothing but undeveloped assertions that the requested assistance would be beneficial.

Appellant having failed to make a preliminary showing that the expert assistance which he sought was necessary to the selection of a fair and impartial jury, the trial court did not err in denying appellant's motion. **Appellant's ninth point of error is overruled.**

The judgment of the trial court is **AFFIRMED**.

BAIRD, J., concurs with note:

I disagree with the treatment of point of error one for the reasons stated in *Morris v. State*, —— S.W.2d ——, —— (Tex.Cr.App. 1996)(Baird, J., dissenting). Consequently, I join only the judgment of the Court.

---

2. Appellant also complains about the denial of expert assistance on the mitigation issue. However, since appellant does not make any arguments regarding expert assistance on this issue, we will only address expert assistance on the jury selection issue.