TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00244-CR






Nathaniel Anthony Boyd, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BEXAR COUNTY, 290TH JUDICIAL DISTRICT


NO. 98-CR-0792, HONORABLE PAT PRIEST, JUDGE PRESIDING







 Appellant Nathaniel Anthony Boyd pleaded not guilty to the charge of murder. See
Tex. Penal Code Ann. § 19.01(b)(1), (2) (West 1994 & Supp. 1999). The jury found him guilty,
and the trial court assessed punishment at fifty years' confinement. In three points of error, Boyd
argues that the evidence was legally and factually insufficient to support the verdict and that he
was denied a fair trial because of the admission of hearsay. We will affirm the conviction.


BACKGROUND

 Nathaniel Boyd was married to the victim, Rochelle Boyd. On October 30, 1997,
the couple was separated and in the process of obtaining a divorce. At approximately 3:30 p.m.
on October 30, Rochelle and her mother, Delores Steen, drove to appellant's sister's home to
retrieve some documents from appellant pertaining to the divorce. Steen testified that she waited
in the car while her daughter went inside. After a few minutes, Rochelle exited the house and
started walking toward the vehicle with appellant following a few steps behind her. Rochelle
entered the driver's side of the vehicle, closed the door, and started the engine. Appellant stood
next to the driver's side and talked briefly with Rochelle. He then reached behind his back,
retrieved a .22 caliber handgun, and shot Rochelle five times, including one shot to the head,
three to the chest, and one to the abdomen. (1) When he was finished shooting, appellant turned and
walked back to the house.

 Immediately, Steen put the car in drive, moved the victim's foot, placed her own
foot on the accelerator, and drove approximately two blocks to the Ella Austin Health Center. 
Emergency medical personnel arrived at the scene shortly thereafter and transported the victim
to Brooke Army Medical Center, where she was pronounced dead at 4:15 p.m.


DISCUSSION

Sufficiency of the Evidence

 In his first and second points of error, Boyd argues that the evidence is legally and
factually insufficient to support his conviction. In determining the legal sufficiency of the
evidence to support a criminal conviction, we view all the evidence in the light most favorable to 
the verdict and determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)
Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). Any inconsistencies in the
evidence should be resolved in favor of the verdict. See Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988). 

 When conducting a factual sufficiency review, we do not view the evidence in the
light most favorable to the verdict. Instead, we consider all evidence equally, including the
existence of alternative hypotheses. See Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin
1992, no pet.). But we do not substitute our judgment for that of the jury and will set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We may not
reverse a jury's decision simply because we disagree with the result. See Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997).

 Boyd contends that because Steen's testimony was inconsistent and she has a
criminal record, her testimony is incompetent; without her testimony, Boyd argues, the verdict
is wholly unsupported and against the great weight of the evidence. We disagree.

 To establish that Steen's testimony was inconsistent, Boyd points to her testimony
regarding a kitchen knife and a box cutter in Steen's car on the day of the murder. On direct
examination, Steen testified that she placed both items in the console of the car between the front
seats. However, on cross-examination Steen admitted that the knife was found on the floor of the
vehicle and the box cutter was never found. (2) A detective who investigated the scene corroborated
Steen's testimony on cross-examination.

 Although we are uncertain whether Steen's two statements are inconsistent since
they do not directly contradict each other, the decision on the relative weight to be given allegedly
contradictory testimony is within the sole province of the jury, because it turns on an evaluation
of credibility and demeanor. See Cain v. State, 958 S.W.2d at 408-09. Generally, inconsistencies
do not destroy testimony; they only affect its weight. See Johnson v. State, 454 S.W.2d 205
(Tex. Crim. App. 1970).

 Boyd also points to Steen's criminal record as proof that her testimony is
unreliable. A witness's criminal history is one factor that a jury may consider when assessing
credibility, but what weight, if any, to assign to such history is within the province of the jury. 
See Johnson v. State, 463 S.W.2d 736, 737 (Tex. Crim. App. 1971). (3) The jury is free to believe
or disbelieve any part of any witness's testimony. See Moore v. State, 935 S.W.2d 124, 126
(Tex. Crim. App. 1996).

 Steen's testimony was also corroborated by a Bexar County medical examiner who
testified that the autopsy performed on the decedent supports Steen's version of events. According
to the examiner, the gunshot to the decedent's head was at a range of three to six inches; the other
four shots were contact wounds, meaning the gun was in contact with the decedent's body or
clothing at the time it was fired. Four of the five shots traveled left to right, front to back, and
slightly downward in direction. The medical examiner testified that the findings from the autopsy
are consistent with a scenario in which the victim was sitting in a vehicle and the shooter was
standing to her left pointing the gun downward. Other courts have held that eyewitness testimony,
corroborated by that of the medical examiner, is sufficient to support a murder conviction. See,
e.g., Garza Garza v. State, 788 S.W.2d 651, 655 (Tex. App.--Corpus Christi 1990, no pet.).

 Based on our review of the evidence, we hold that a rational jury could have found
the essential elements of the offense beyond a reasonable doubt and that the verdict is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We
overrule Boyd's first and second points of error.


Admission of Hearsay

 In his third point of error, Boyd complains that he was denied a fair trial because
the court admitted hearsay statements into evidence. We review a trial court's decision to admit
or exclude evidence, including hearsay, for abuse of discretion. See Bingham v. State, 987
S.W.2d 54, 57 (Tex. Crim. App. 1999); Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App.
1994). A trial court abuses its discretion when it acts without reference to guiding principles or
acts in an arbitrary or capricious manner. See Lyles v. State, 850 S.W.2d 497, 502 (Tex. Crim.
App. 1993).

 Boyd complains that the court allowed a witness to testify as follows:


Q. But when you found out about--and just tell the jury what was the nature of the
report that you heard on the news that you can recall?


A. Okay. The first one was--


 [Counsel for Boyd] I'm going to object to the hearsay something coming
from an unauthenticated news report.


 [The Court] Sustained.


Q. [The prosecutor] As a result of watching these reports, did you have a
conversation at some point in time afterwards with, I
guess you call him, Anthony. Right?


A. Yeah.


Q. What did you ask him?


A. I didn't really ask him anything. I more or less told him that--what--after last
time they put his picture up on the TV and I was at work and I saw the whole
report and they said that he had shot his wife.


 [Counsel for Boyd] I object to the hearsay.


 [The Court] Don't tell us what they said on TV, please.



 Boyd correctly argues that there is no hearsay exception for televised news reports. 
See Tex. R. Evid. 803, 804. That is, a news report, if offered to prove the truth of its contents,
is inadmissible hearsay. See Tex. R. Evid. 801. In this case, however, the witness did not testify
as to the contents of the news report to prove the truth of the matter asserted (i.e., that Boyd killed
his wife). Rather, her references to the news report served merely to show the witness's
motivation for contacting Boyd. Evidence concerning the news report was not offered to prove
the truth of its contents; therefore, its admission was not error. See Dinkins v. State, 894 S.W.2d
330, 347 (Tex. Crim. App. 1995); Schaffer v. State, 777 S.W.2d 111, 117 (Tex. Crim. App.
1989).

 Even if the testimony about the news report were offered to prove the truth of its
contents, Boyd fails to demonstrate any error by the trial court. The first time the witness
mentioned the news report, Boyd's trial counsel objected, and the court sustained the objection. 
The second time, counsel for Boyd again objected and the court effectively sustained the objection
by instructing the witness not to disclose what was said in the report. After the witness offered
a third out-of-court statement, the court stated to the witness, "This is a direct order from me to
you: Answer the question you are asked and no other question." The trial court in effect
sustained defendant's objections at trial and admonished the witness three times not to relate what
was said in the news report and not to volunteer additional information. Boyd received no adverse
ruling from the trial court, and we are presented with nothing to review. 

 Boyd's real complaint seems to be that, although his objections were sustained, he
was prejudiced by the jury's exposure to the information. Any error was waived, however,
because Boyd did not move to strike or to instruct the jury to disregard the testimony or request
a mistrial. See Montoya v. State, 744 S.W.2d 15, 32 (Tex. Crim. App. 1987). In fact, in a bench
conference following the witness's third potential hearsay statement, Boyd's attorney stated: 


Judge, I can't ask for an instruction because it calls more attention to it. I don't
know whose side she's on, but she keeps blurting things out about trouble and
probation officer. It's highly prejudicial to my client. She's been instructed, and
I appreciate it, by the Court, but maybe we need to have a hearing outside the
presence of the jury first and find out what she can reasonably testify to. I'm just
trying to think of some way to keep this from reoccurring.



(Emphasis added.) Thus, Boyd received no adverse ruling and preserved no error for appeal. 
See Tex. R. App. P. 33.1. We overrule Boyd's third point of error.


CONCLUSION

 Having overruled all three points of error, we affirm the conviction.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: December 2, 1999

Do Not Publish

1.   Steen testified she heard only three shots, but a medical examiner testified that an autopsy
revealed that the deceased was shot five times.
2.   Other than their possible effect on Steen's credibility, there is no evidence in the record
suggesting that the existence or location of the knife or box cutter is relevant. Whether the knife
was in the console or on the floor, its location has no bearing on Boyd's guilt. See Richardson
v. State, 744 S.W.2d 65, 80 (Tex. Crim. App. 1987) (stating that evidence offered by a defendant
that is not inconsistent with or preclusive of his guilt is not probative and may be excluded). 
Boyd's trial counsel appeared to argue that the decedent used the knife to attack Boyd and that he
shot her in self-defense. However, Boyd presented no evidence to support this argument. The
court specifically denied Boyd's request for a self-defense instruction in the jury charge, and Boyd
does not allege that denial of the instruction was error.
3.   We cite two cases styled Johnson v. State involving different defendants.


admissible hearsay. See Tex. R. Evid. 801. In this case, however, the witness did not testify
as to the contents of the news report to prove the truth of the matter asserted (i.e., that Boyd killed
his wife). Rather, her references to the news report served merely to show the witness's
motivation for contacting Boyd. Evidence concerning the news report was not offered to prove
the truth of its contents; therefore, its admission was not error. See Dinkins v. State, 894 S.W.2d
330, 347 (Tex. Crim. App. 1995); Schaffer v. State, 777 S.W.2d 111, 117 (Tex. Crim. App.
1989).

 Even if the testimony about the news report were offered to prove the truth of its
contents, Boyd fails to demonstrate any error by the trial court. The first time the witness
mentioned the news report, Boyd's trial counsel objected, and the court sustained the objection. 
The second time, counsel for Boyd again objected and the court effectively sustained the objection
by instructing the witness not to disclose what was said in the report. After the witness offered
a third out-of-court statement, the court stated to the witness, "This is a direct order from me to
you: Answer the question you are asked and no other question." The trial court in effect
sustained defendant's objections at trial and admonished the witness three times not to relate what
was said in the news report and not to volunteer additional information. Boyd received no adverse
ruling from the trial court, and we are presented with nothing to review. 

 Boyd's real complaint seems to be that, although his objections were sustained, he
was prejudiced by the jury's exposure to the information. Any error was waived, however,
because Boyd did not move to strike or to instruct the jury to disregard the testimony or request
a mistrial. See Montoya v. State, 744 S.W.2d 15, 32 (Tex. Crim. App. 1987). In fact, in a bench
conference following the witness's third potential hearsay statement, Boyd's attorney stated: 


Judge, I can't ask for an instruction because it calls more attention to it. I don't
know whose side she's on, but she keeps blurting things out about trouble and
probation officer. It's highly prejudicial to my client. She's been instructed, and
I appreciate it, by the Court, but maybe we need to have a hearing outside the
presence of the jury first and find out what she can reasonably testify to. I'm just
trying to think of some way to keep this from reoccurring.



(Emphasis added.) Thus, Boyd received no adverse ruling and preserved no error for appeal. 
See Tex. R. App. P. 33.1. We overrule Boyd's third point of error.


CONCLUSION

 Having overruled all three points of error, we affirm the conviction.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: December 2, 1999

Do Not Publish

1.   Steen testified she heard only three shots, but a medical examiner testified that an autopsy
revealed that the deceased was shot five times.
2.   Other than their possible effect on Steen's credibility, there is no evidence in the record
suggesting that the existence or location of the knife or box cutter is relevant. Whether the knife
was in the console or on the floor, its location has no bearing on Boyd's guilt. See Richardson
v. State, 744 S.W.2d 65, 80 (Tex. Crim. App. 1987) (stating that evidence offered by a defendant
that is not inconsistent with or preclusive of his guilt is not probative and may be excluded). 
Boyd's trial counsel appeared to argue that the decedent used the knife to attack Boyd and that he
shot her in self-defense. However, Bo