TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00049-CR







Kareem Harrison, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT


NO. 97-266, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING







 A jury found appellant Kareem Harrison guilty on two counts of aggravated
robbery of Maria Paredes and Jorge Paredes. (1) See Tex. Penal Code Ann. § 29.03 (West 1994). 
The jury assessed appellant's punishment at seven years' incarceration on each count. We will
affirm.


BACKGROUND


 Appellant does not challenge the sufficiency of the evidence supporting his
conviction. However, appellant contends Aaron Cubit was an unindicted accomplice and Earl
Ketchum a convicted accomplice, and he challenges the sufficiency of the evidence corroborating
their testimony. For that reason, we will take our recitation of the facts from the testimony of
other witnesses. On or about March 13, 1997, five young men were gathered at Cubit's residence
in Luling, Caldwell County, Texas. The five men were Cubit, appellant, Ketchum, Clancy Long,
and Shane Stephens. 

 Clancy Long testified as follows: On the night in question, appellant was "[a]lmost
completely bald" because he had "shaved [his head] freshly like a couple days prior." Late in the
evening, at appellant's request, Cubit produced a double-barrel "sawed-off shotgun." Appellant
said he was "going to go get some money with [the shotgun]" and "was going to go rob some
Mexicans up the street." Appellant told Ketchum to go with him, gave Ketchum the gun, and
"told him just to hold it, that [appellant would] take it back whenever they got there." Ketchum
"always wore a pantyhose on his head trying to get a curl or a wave." Until that night he wore
one almost every day. Although Long did not know whom appellant intended to rob, he saw the
two men walk away with the gun in the direction of Maria Paredes's residence. 

 Members of the Paredes family testified that on the evening in question, Maria
Paredes, her son Jorge, daughter-in-law Flora, and grandson Joshua were watching television in
the living room of Maria's residence when they saw the screen door open. An African-American
male in his late teens to early twenties entered the room carrying a sawed-off shotgun. The
Paredeses described the intruder as being approximately 5'9" tall, weighing about 150 pounds,
having shaved-off hair, and covering the lower portion of his face with a shirt or jacket. The man
pointed the gun at Jorge and demanded money. 

 Jorge testified that he got his wife's purse and that as he handed it to the intruder,
the man tugged at the purse. Jorge tugged back on the purse with his right hand and with his left
hand grabbed the barrel of the gun and pushed it up towards the ceiling. Joshua came to Jorge's 
aid, kneeing the intruder in the groin and the ribs. Jorge wrestled the gun away from the intruder,
grabbed him in a choke hold, and the two men went outside. Once outside, Jorge saw a second
young African-American male standing on the porch with pantyhose pulled over his face. Jorge
released the first man because he feared the second man had a weapon. The perpetrators then fled
on foot. Jorge testified that the man who had been inside the house with the gun was "limping
a little bit because . . . he wasn't running very fast."

 Long further testified that he saw appellant and Ketchum running back toward
Cubit's house pursued by Jorge Paredes and that appellant "looked like he was hurt" and "was
holding his ribs." Neither appellant nor Ketchum had the shotgun Long had seen them carrying
when they left. Long stated that he also saw Jorge Paredes and that Jorge "had the shotgun in his
hand." 

 When police arrived at the Paredes residence, they took the shotgun and questioned
the family. The Paredeses described the two suspects "as black males approximately 20 years of
age." Although they could give an approximate height-and-weight description of the suspect who
had been in the house, the Paredeses could not describe the height or weight of the second
perpetrator. The Paredeses were later shown a photo line-up containing pictures of Ketchum and
appellant but could not identify either man as one of the perpetrators. The robbery remained
unsolved for a period of some months.

 At some point, Long told his girlfriend about the incident. When that young
woman later was questioned by the police on an unrelated matter, she informed the police about
what Long had told her. The police then questioned Long, who gave a statement. Shortly
thereafter, the police arrested appellant. 

 On August 26, 1998, a jury found appellant guilty of both counts of aggravated
robbery as charged in the indictment and assessed punishment for each at seven years'
imprisonment. Appellant appeals his conviction in five points of error. 


DISCUSSION


Corroboration of Accomplice Witness Testimony

 In his first point of error, appellant alleges that Aaron Cubit was the primary
witness whose testimony placed appellant at the scene, that Cubit was an uncharged accomplice
to the robbery, and that the record contains insufficient evidence to corroborate his testimony or
that of Earl Ketchum. In his fourth point of error, appellant contends that the court committed
"fundamental error" by not including an accomplice witness instruction in the charge at the guilt-innocence phase. We disagree.

 Appellant argues that the only testimony that positively identified appellant as the
man inside Maria Paredes's home came from Cubit. During his testimony, Earl Ketchum
admitted he had pled guilty to robbing these victims on the date in question. However, he
implicated Cubit in the offense rather than appellant. Ketchum denied having made a number of
statements to Cubit regarding the events of March 13. The State then recalled Cubit to impeach
Ketchum's testimony. On recall, Cubit testified that Ketchum told him that appellant had had the
gun that night and "that some man jumped on him and took the gun away." Appellant argues that
there is no other evidence that directly places appellant at the scene, meaning there is insufficient
evidence to corroborate Cubit's testimony and show that appellant was the man in Maria Paredes's
house. 

 This Court has previously held that a trial court errs if it fails to give an accomplice
witness instruction if evidence raises the issue, even if the accused fails to request the instruction. 
See Howard v. State, 972 S.W.2d 121, 126 (Tex. App.--Austin 1998, no pet.). However, failure
to request the instruction or to object to its omission affects the standard of harm that we apply
on review. See id. Having made no request or objection, appellant must establish that he suffered
actual egregious harm such that he did "not receive a fair and impartial trial" to show reversible
error. Solis v. State, 792 S.W.2d 95, 97-98 (Tex. Crim. App. 1990) (quoting Almanza v. State,
686 S.W.2d 157, 171-72 (Tex. Crim. App. 1984)). 

 A challenge of insufficient corroboration is not the same as a challenge of
insufficient evidence to support the verdict as a whole. See Cathey v. State, 992 S.W.2d 460,
462-63 (Tex. Crim. App. 1999). With respect to corroboration of accomplice witness testimony,
"[a]ll the law requires is that there be some non-accomplice evidence which tends to connect the
accused to the commission of the offense. While individually these circumstances might not be
sufficient to corroborate the accomplice testimony, taken together, rational jurors could conclude
that this evidence sufficiently tended to connect appellant to the offense." Hernandez v. State, 939
S.W.2d 173, 178-79 (Tex. Crim. App. 1997) (citing Cox v. State, 830 S.W.2d 609, 612 (Tex.
Crim. App. 1992); Paulus v. State, 633 S.W.2d 827, 846 (Tex. Crim. App. 1981)). To
determine the sufficiency of the corroboration, we eliminate the testimony of the accomplice and
then examine the remaining evidence to ascertain whether any evidence tends to connect the
accused to the commission of the offense even if the evidence does not directly link him to the
crime. See Reed v. State, 744 S.W.2d 112, 125-26 (Tex. Crim. App. 1988). Even insignificant
circumstances can satisfy the test. See id. at 126. 

 All of the background evidence above comes from witnesses other than Cubit and
Ketchum. Thus, the record contains a significant amount of both circumstantial and direct
evidence indicating that appellant was the man who entered Maria Paredes's residence with a
sawed-off shotgun and demanded money. The shotgun that police took from the Paredes residence
was introduced at trial. Shane Stephens identified the sawed-off shotgun that police recovered
from Jorge Paredes as the one that he had seen in Cubit's home on March 13 when appellant was
present. Clancy Long testified that the gun produced at trial was the one he had seen at Cubit's
residence and that appellant and Ketchum had it with them when Long saw the two leave in the
general direction of Maria Paredes's residence "to rob some Mexicans down the street." Another
witness testified that Maria Paredes's residence was located approximately three hundred yards
from Cubit's home. 

 Members of the Paredes family tentatively identified appellant as the intruder. In
court, Maria Paredes identified appellant as the intruder based on how his eyes looked although
she also stated that she could not positively identify appellant as the intruder. Flora Paredes said
that appellant's voice sounded like that of the man with the gun but that she could not be sure. 
Jorge Paredes conclusively identified appellant's voice as being that of the intruder even though
he could not make a visual identification. 

 Appellant emphasizes the fact that Jorge's description of the intruder at the time
of the offense does not match appellant's appearance eighteen months later at the time of trial. 
Jorge described the intruder as being approximately 5'8" tall and weighing 150 pounds. At trial
Jorge estimated that appellant was approximately 5'11" or 6" tall, weighing around 200 pounds. 
Jorge noted appellant is a young man and might have grown in the interim. Indeed, a jailer from
Caldwell County testified that when appellant was "booked" into jail in December 1997, he
reported his height as 5'9" and his weight as 151 pounds. In any event, it is the sole province of
the jury to determine the relative weight to be given allegedly contradictory evidence. See Cain
v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). The jury was free to disregard all
or any part of any witness's testimony. See Moore v. State, 935 S.W.2d 124, 126 (Tex. Crim.
App. 1996). 

 Even assuming, without deciding, that Cubit was an uncharged accomplice, we hold
that rational jurors could conclude that other testimony sufficiently tended to connect appellant to
the offense so as to corroborate the accomplice testimony. Having held that there was sufficient
corroboration, we conclude that appellant has failed to demonstrate that he suffered egregious
harm by being denied a fair and impartial trial. We overrule appellant's first and fourth points
of error.


Denial of Motion for Mistrial

 In his second point of error, appellant contends that the trial court erred by denying
his motion for a mistrial after sustaining an objection to a leading question the State asked Cubit. 
On direct examination, the State asked Cubit, "What, if anything, did [appellant] say about what
he was going to do with the shotgun, Aaron?" Cubit twice responded that he could not recall
what appellant had said, whereupon the State asked that he refresh his memory by reviewing a
statement he had made to the police. The relevant portions of the exchange follow. 

Q. [by State] Okay. In that statement, did you tell the policemen in Luling about
something the defendant said about wanting to get some money?


[overruled defense objection] 


[Cubit]: Yes, sir. 


Q. (BY [STATE]) What did you hear the defendant say about that?


A. He wanted to go do some work. 


Q. Okay. What did he say about money, Mr. Cubit?


A. He said he knew where there was some money that he could go get.


Q. Now, when the defendant told that to you, what did you say right back to
him? 


A. "No."


Q. No what?


A. I told him, no, I wasn't going to go, for him to take Earl.


Q. Now, why weren't you going to go with him to get some money?


A. I don't know.


Q. What?


A. I just didn't have -- well, I don't know. I wasn't down for it.


Q. You what?


A. I wasn't down for it.


Q. "I wasn't down for it," meaning what? 


A. I wasn't going to go do it.


Q. Meaning you weren't going to go rob anybody with a shotgun? 


A. Yes, sir.


[Defense counsel]: Objection, objection, that's leading and suggestive, Judge.


THE COURT: Sustain the objection.


[Defense counsel]: I ask -- we'll ask the jury to disregard that answer to that
question.


THE COURT: The jury will be instructed to disregard the last question.


[Defense counsel]: And we move for a mistrial at this time.


THE COURT: The request is denied. 



 Appellant contends that the question, "Meaning you weren't going to go rob
anybody with a shotgun?" was so inflammatory and prejudicial that the trial court's decision to
deny appellant's request for a mistrial was reversible error. We do not agree. 

 We note first that the witness was allowed to answer the question before appellant
objected. The trial court sustained the objection and instructed the jury to disregard the question,
but not the answer, without further complaint by appellant. Assuming appellant preserved error,
we hold the trial court did not err in failing to grant a mistrial. Cubit made several statements
without objection reflecting that he would not participate in appellant's robbery plan. Based upon
the testimony of Cubit and other witnesses, it is clear Cubit was testifying that he declined to
pursue appellant's plan to rob someone using the gun. 

 A mistrial is used to halt trial proceedings when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile. See Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999). Thus, a trial court may properly exercise its
discretion to declare a mistrial if an impartial verdict cannot be reached or if a verdict of
conviction could be reached but would have to be reversed on appeal due to an obvious procedural
error. See id.; Sewell v. State, 696 S.W.2d 559, 560 (Tex. Crim. App. 1983). The determination
of whether a given error necessitates a mistrial must be made by examining the particular facts
of the case. See Ladd, 3 S.W.3d at 567; Hernandez v. State, 805 S.W.2d 409, 413-14 (Tex.
Crim. App. 1990). The asking of an improper question will seldom call for a mistrial because,
in most cases, any harm can be cured by an instruction to disregard. See Ladd, 3 S.W.3d at 567. 
A mistrial is required only when the improper question is clearly prejudicial to the defendant and
is of such character as to suggest the impossibility of withdrawing the impression produced in the
minds of the jurors. See id. A trial court's denial of a mistrial is reviewed under an abuse of
discretion standard. See Ladd, 3 S.W.3d at 567; State v. Gonzalez, 855 S.W.2d 692, 696 (Tex.
Crim. App. 1993).

 In Ladd v. State, the court of criminal appeals held that a trial court did not abuse
its discretion by denying a mistrial after sustaining an objection to a question asking whether a
witness knew whether Ladd had been smoking crack when a murder victim was missing and then
found. See 3 S.W.3d at 566-67. In holding that the trial court acted within its discretion, the
court of criminal appeals stated that "[t]he question in issue did not actually assert that appellant
was smoking cocaine on the night of the murder, and the trial court could have reasonably
concluded that the question was not so inflammatory as to be incurable by an instruction to
disregard." Id. We believe the same rationale applies in this case. 

 Cubit testified, "I wasn't going to go do it," and "I told him, no, I wasn't going
to go . . . ." The State's question attempts to clarify Cubit's statement that he "wasn't down for
it." The question does not actually assert that appellant was going to go rob someone with a
shotgun. We therefore hold that the trial court could have reasonably concluded that the final
question was not so inflammatory as to be incurable by an instruction to disregard and that the
court did not abuse its discretion by overruling appellant's motion. We overrule appellant's
second point of error.


Allowing Hearsay Statement into Evidence

 In his third point of error, appellant argues that the trial court erred by admitting
a statement by Cubit that "[Ketchum] said something to the effect that they lost the gun trying to
get a purse." Appellant does not contend that Ketchum's statement was not self-inculpatory. 
Instead he argues that there are insufficient corroborating circumstances to indicate the
trustworthiness of this statement.

 Appellate courts review a trial court's decision to admit or exclude evidence under
an abuse of discretion standard. See Green v. State, 934 S.W.2d 92, 102 (Tex. Crim. App.
1996); Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). A trial court abuses its
discretion when it acts without reference to guiding principles or acts in an arbitrary or capricious
manner. See Lyles v. State, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).

 A trial court may not admit out-of-court statements "tending to expose the declarant
to criminal liability . . . unless corroborating circumstances clearly indicate the trustworthiness
of the statement." Tex. R. Evid. 803(24) (emphasis added). In reviewing whether circumstances
clearly indicate a hearsay statement's trustworthiness, a trial court inquires into the circumstances
in which the declarant made the statement to the witness. See Guidry v. State, 9 S.W.3d 133, 150
(Tex. Crim. App. 1999) (quoting Idaho v. Wright, 497 U.S. 805, 819 (1990)). 

 In his point of error, appellant argues that the circumstances surrounding
Cubit's--i.e., the witness's--testimony render Cubit an unreliable witness. Appellant makes no
argument that the declarant--i.e., Ketchum--had reason to lie to Cubit and does not discuss the
circumstances surrounding Ketchum's making the statement to Cubit. Appellant claims that Cubit
was an uncharged accomplice in this case and argues that "anything [Cubit] said on the witness
stand inculpating other parties could have been for the purpose of currying favor with the State
to avoid criminal prosecution." (Emphasis added.) Appellant also contends that "we should
consider that Earl Ketchum had already been convicted of the robbery of the same alleged victims,
thus no further harm could be done to Earl Ketchum by Aaron Cubit making the hearsay statement
inculpating Appellant." 

 Appellant's argument goes to Cubit's credibility and the weight to be given to his
testimony rather than to the circumstances surrounding Ketchum's out-of-court statement. 
Evaluation of the credibility and demeanor of witnesses and the decision on what weight, if any,
to give a witness's testimony lie within the sole province of the jury. See Cain, 958 S.W.2d at
408-09. The jury was free to disregard all or any part of Cubit's testimony. See Moore, 935
S.W.2d at 126.

 Our review of the record indicates that Cubit and Ketchum were acquainted before
the robbery and that Ketchum made the statements to Cubit shortly after the robbery. In addition,
we find no indication in the record that Ketchum's statements to Cubit, if made, were anything
other than spontaneous and voluntary. We overrule appellant's third point of error.


Admission of Videotape at Punishment Stage

 In his fifth point of error, appellant asserts that the trial court erred in admitting
a videotape in which appellant admitted an alleged cocaine possession. Appellant argues that the
State failed to lay the proper predicate for the tape's admission, that its admission violated Code
of Criminal Procedure article 37.07, (2) and that the probative value of the tape was substantially
outweighed by the danger of unfair prejudice. As previously noted, we review a trial court's
decision to admit or exclude evidence for an abuse of discretion. See Green, 934 S.W.2d at 102. 

 Appellant asserts that the videotape was offered as a prior inconsistent statement
to impeach appellant and that the State failed to lay a proper predicate for its admission under rule
613. See Tex. R. Evid. 613. Rule 613 provides in pertinent part that "[i]n examining a witness
concerning a prior inconsistent statement . . . before . . . extrinsic evidence of[] such statement
may be allowed, the witness must be told the contents of such statement and the time and place
and person to whom it was made, and must be afforded an opportunity to explain or deny such
statement." Id.

 Appellant claims that "[t]he record does not indicate Appellant was afforded any
such opportunity. In the course of asking Appellant about his drug use, the State merely asked
Appellant if he had seen [the video's sponsoring witness] in the courthouse that day." The record
does not support appellant's claim. The State asked appellant whether, in the spring of 1997, he
had received stolen goods from Earl Ketchum to sell to get cocaine. Appellant denied that such
events had occurred. The following interchange then took place.


Q. [by State] Do you remember talking with [the State's sponsoring witness] in
the police department in Luling?


A. [by appellant] Yes, sir.


Q. Videotape?


A. Yes, sir.


Q. Does that refresh your recollection?


A. Yes, sir. 


Q. Do you want to change your testimony?


A. No, sir.



 Although the State did not specifically tell appellant the contents of the videotape,
the questions regarding the State's sponsoring witness immediately followed a question regarding
appellant allegedly receiving stolen goods and bartering them for cocaine. Appellant apparently
understood what the contents of the tape were since he agreed that his recollection was refreshed. 
And appellant was afforded an opportunity to alter his in-court testimony after being made aware
of the existence and contents of the videotape. We therefore hold that the State laid the proper 

predicate under rule 613(a).

 Appellant also claims that admission of the videotape violated the Code of Criminal
Procedure regarding evidence admissible at the punishment phase of trial. See Tex. Code Crim.
Proc. art. 37.07, § 3(a). Appellant argues that evidence admissible under article 37.07 must still
meet the balancing test of rule 403. (3) He cites a recent court of criminal appeals case for the
proposition that "a trial court abuses its discretion under Rule 403 when it allows the State to
admit impeachment evidence for the primary purpose of placing evidence before the jury that was
otherwise inadmissible." Hughes v. State, 4 S.W.3d 1, 5-6 (Tex. Crim. App. 1999). Appellant's
reliance on Hughes is misplaced.


 In Hughes, the court of criminal appeals addressed a question of admissibility at
the guilt-innocence phase regarding whether the State should be allowed to call a witness solely
for the purpose of impeaching that witness with otherwise inadmissible evidence. See id. at 5-6. 
Such is not the case here. 

 The State did not call appellant. Indeed, appellant chose to testify at punishment. 
He requested probation and indicated on direct examination that he was capable of being a law-abiding citizen. On cross examination, the State asked appellant--without objection--whether he had
ever received stolen property and traded that property for cocaine. Appellant said he had not, that
he had never done such a thing. Appellant was then reminded of his earlier statement at the police
station and given an opportunity to alter his testimony but declined to do so. The State then
introduced the videotape in which appellant told the State's sponsoring witness how much cocaine
he had received in exchange for the stolen property. Thus the videotape was properly admissible
to impeach appellant's later inconsistent testimony. Because appellant was offered a chance to
recant his testimony after being reminded of the videotape and chose not to do so, we cannot say
that the tape's admission was unduly prejudicial. Had appellant admitted having made the prior
statement, the videotape would have been inadmissible. See Tex. R. Evid. 603. We hold that the
trial court did not abuse its discretion in admitting the videotape and overrule appellant's fifth
point of error.


CONCLUSION


 Having overruled appellant's points of error, we affirm the judgment of conviction.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 13, 2000

Do Not Publish
1. Many witnesses referred to Jorge Paredes--the victim in count one--by the nickname
"George." We will use his given name as it appeared in the indictment.
2. Tex. Code Crim. Proc. Ann. art. 37.07 (West Supp. 2000).
3. In its brief the State responds as though appellant were arguing that the State failed to prove
the extrinsic crime or bad act mentioned in the videotape beyond a reasonable doubt. Although
appellant objected to the videotape on this basis in the trial court, we discern no such argument
in his brief to this Court. Although appellant makes a single statement that "said evidence
indicated (not proved beyond a reasonable doubt) the commission of felony cocaine possession,"
such a conclusory statement presents us with nothing to review. 



>



 Although the State did not specifically tell appellant the contents of the videotape,
the questions regarding the State's sponsoring witness immediately followed a question regarding
appellant allegedly receiving stolen goods and bartering them for cocaine. Appellant apparently
understood what the contents of the tape were since he agreed that his recollection was refreshed. 
And appellant was afforded an opportunity to alter his in-court testimony after being made aware
of the existence and contents of the videotape. We therefore hold that the State laid the proper 

predicate under rule 613(a).

 Appellant also claims that admission of the videotape violated the Code of Criminal
Procedure regarding evidence admissible at the punishment phase of trial. See Tex. Code Crim.
Proc. art. 37.07, § 3(a). Appellant argues that evidence admissible under article 37.07 must still
meet the balancing test of rule 403. (3) He cites a recent court of criminal appeals case for the
proposition that "a trial court abuses its discretion under Rule 403 when it allows the State to
admit impeachment evidence for the primary purpose of placing evidence before the jury that was
otherwise inadmissible." Hughes v. State, 4 S.W.3d 1, 5-6 (Tex. Crim. App. 1999). Appellant's
reliance on Hughes is misplaced.


 In Hughes, the court of criminal appeals addressed a question of admissibility at
the guilt-innocence phase regarding whether the State should be allowed to call a witness solely
for the purpose of impeaching that witness with otherwise inadmissible evidence. See id. at 5-6. 
Such is not the case here. 

 The State did not call appellant. Indeed, appellant chose to testify at punishment. 
He requested probation and indicated on direct examination that he was capable of being a law-abiding citizen. On cross examination, the State asked appellant--without objection--whether he had
ever received stolen property and traded that property for cocaine. Appellant said he had not, that
he had never done such a thing. Appellant was then reminded of his earlier statement at the police
station and given an opportunity to alter his testimony but declined to do so. The State then
introduced the videotape in which appellant told the State's sponsoring witness how much cocaine
he had received in exchange for the stolen property. Thus the videotape was properly admissible
to impeach appellant's later inconsistent testimony. Because appellant was offered a chance to
recant his testimony after being reminded of the videotape and chose not to do so, we cannot say
that the tape's admission was unduly prejudicial. Had appellant admitted having made the prior
statement, the videotape would have been inadmissible. See Tex. R. Evid. 603. We hold that the
trial court did not abuse its discretion in admitting the videotape and overrule appellant's fifth
point of error.


CONCLUSION


 Having overruled appellant's points of error, we affirm the judgment of conviction.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 13, 2000

Do Not Publish
1. Many witnesses referred to Jorge Paredes--the victim in count one--by the nickname
"George." We will use his given name as it appeared in the indictment.