IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00100-CR

 

Charles West,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 19th District
Court

McLennan County, Texas

Trial Court No. 2006-1005-C1

 



MEMORANDUM  Opinion



 

Charles West was charged in a seven-count
indictment with the felony offenses of aggravated sexual assault and indecency
with a child for allegedly engaging in sexual relations with his girlfriend’s
thirteen-year-old daughter.  The jury found West guilty on three counts of aggravated
sexual assault and it assessed punishment at fifteen years in prison on each
count, with count one running consecutive to count two.  West brings seven
issues on appeal.  We will affirm. 

 

Background 

            The offenses pertinent to this appeal
were alleged to have been committed on January 4, 2006.  According to the
victim, on that morning West called her after her mother had left for work.  She
told West that she was “kind of mad” at him because he still had not taught her
about the “real world” and showed her how to have sex like he previously
promised.  West told the victim that he was going to come over that morning, and
she said that she was scared because she thought her mother might come home
from work.  West assured her that he would make up an excuse and park far away
so that his car would not be seen.  The victim testified that after engaging in
various sexual acts with West, she heard the police knocking on the door.  She
quickly dressed and told the officers that she was home alone and the officers
left.

Later, the victim talked to her friend
about having sex with West on the morning of January 4.  Her friend told her
that she needed to tell her mother what happened, but the victim refused.  Several
days later, the victim’s mother confronted her about what happened with West
because the victim’s friend had contacted her.  The victim initially denied
having sex with West but eventually admitted it.

The victim’s mother took her to the Advocacy Center where Dr. Ann Sims examined her.  Dr. Sims testified that the victim told
her that her mother’s boyfriend sexually assaulted her.  During the exam, Dr.
Sims noticed two marks on the victim’s breast that looked like possible bite
marks.  She documented them by noting them in her report and taking pictures.

Linda Olson testified that on the
morning of January 4, she saw West get out of his vehicle in the parking lot of
Brazos Valley Dental Supply, where she worked.  After West got out of the car,
he began to look around and walk towards an adjacent apartment complex.  She
thought something was suspicious and called the police, who then spoke with the
victim.

Several other witnesses testified
including West.  West denied assaulting the victim and stated that the reason
he was at his girlfriend’s house on January 4 was to install secret security
equipment because he feared she was cheating on him.  After hearing all the
evidence, the jury found West guilty on three counts, and not guilty on the
remaining three counts.

Due Process 

             In his first and second
issues, West accuses the State of engaging in prosecutorial misconduct by
suppressing and misrepresenting material evidence, which violated his due process rights.  See
Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Specifically, he argues that the State
refused to present police dispatch records from January 4, 2006, that showed
how much time elapsed between when the police were called and when they arrived
at the scene of the incident.  Further, West complains that the State mislead
the jury on the time frame allegations when it allowed witnesses to testify to
the general times the calls were made instead of introducing evidence of the
actual times.  The State argues that the dispatch records were provided prior
to trial and are not exculpatory. 

To demonstrate reversible error under
the Brady three-pronged test, a defendant must show that: (1) the State
failed to disclose evidence, regardless of the prosecution's good or bad faith;
(2) the withheld evidence is favorable to him; 
(3) the evidence is material, that is, there is a reasonable probability that
had the evidence been disclosed, the outcome of the trial would have been
different.  Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).  Under Brady, the defendant bears the burden of showing that,
in light of all the evidence, it is reasonably probable that the outcome of the
trial would have been different had the prosecutor made a timely disclosure.  Id. 
"The mere possibility that an item of undisclosed information might have
helped the defense, or might have affected the outcome of the trial, does not
establish 'materiality' in the constitutional sense."  Id.

A reviewing court determines materiality
by examining the alleged error in the context of the entire record and in the
context of the overall strength of the State's case.  Thomas v. State,
841 S.W.2d 399, 404 (Tex. Crim. App. 1992).  The reviewing court may consider
any adverse effect that the nondisclosure might have had on the preparation or
presentation of the defendant's case in light of the totality of the
circumstances and with an awareness of the difficulty of reconstructing the
course of the defense and the trial in a post-trial proceeding.  Id. at 405.

The prosecutor testified at the hearing
on the motion for new trial that West’s trial counsel met with her before trial
and he was permitted to review everything in her file, including the police
dispatch records.  There is no evidence otherwise.  Additionally, West conceded
at the motion for new trial hearing that the State disclosed the police
dispatch report in the offense report.  Evidence is not considered to be
suppressed within the meaning of Brady if a defendant or his attorney
either knew, or should have known, of the essential facts permitting him to
take advantage of that evidence.  See Dalbosco v. State, 960 S.W.2d 901,
903 (Tex. App.—Texarkana 1997, order), disp. on merits, 978 S.W.2d 236
(Tex. App.—Texarkana 1998, pet. ref’d).  The record reflects that the
prosecutor did not withhold evidence from West.

Even if we assume that the State
withheld this evidence, West has not shown that the outcome of the proceedings
would have been different had the police dispatch records been introduced at
trial.  Additionally, testimony given at trial matched the time frame suggested
by the police dispatch report.  The police dispatch report, which is the focus
of West’s first two issues, shows that Lieutenant Wells was dispatched at 9:18
a.m. and he arrived on the scene at 9:21 a.m.  The report shows that Wells
checked the area around 9:34 a.m. and cleared the scene at 9:48 a.m.

At trial, Linda Olson testified that on
“January 4th 2006, sometime after 9:00 a.m.” she was at work at Brazos Valley
Dental Supply.  She saw a black man drive into her parking lot but then walk
around the back of the building.  She thought it was unusual because he was
looking around the sides of the building, “like he was playing hide and seek.” 
She then called the police and gave them his license number.  Wells testified
that he was on duty on “January 4th, 2006, at around 9:20 a.m., give or take a
few minutes,” when he responded to a call from the area of Brazos Valley Dental
Supply.  After visiting with Olson and checking the area, he cleared the scene
at 9:48 a.m.  Thus, the evidence was cumulative and accurate and, in light of
the evidence as a whole, it is not evidence sufficiently critical that would
create a considerable likelihood the outcome of the trial would be different.  See
id. at 903.  We overrule West’s first and second issues.

In his third issue, West argues that he was
entitled to an expert forensic odontologist who could have assisted him in
dealing with medical testimony regarding the alleged bite marks on the victim’s
breast. 

Due process demands that an indigent
defendant have a right to a court appointed expert under certain circumstances.
 Ake v. Oklahoma, 470 U.S. 68, 84 L.Ed.2d 53, 105 S.Ct. 1087 (1985).  However, a defendant must show a "compelling need" for the
assistance of an expert.  Matchett v. State, 941 S.W.2d 922, 939 (Tex.
Crim. App. 1996).  It is crucial that a defendant seeking appointment of an
expert under Ake, make a preliminary showing that the expert
assistance is necessary to address a significant issue at trial.  Moore v. State, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996).  To that extent,
a defendant "must offer more than undeveloped assertions that the
requested assistance would be beneficial."  Id.

We review the trial court's ruling on
this issue for an abuse of discretion.  Deason v. State, 84 S.W.3d 793,
796 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).  A review of the
testimony reveals that West did not show a compelling need for the assistance
of another forensic odontologist.  Dr. Sims, who examined the victim and took
pictures of the marks on the victim’s chest, testified that she could not say
whether the marks were bite marks.  According to Sims, research suggested that
if you do not view bite marks within the first three days, the chance of
recovering any useful evidence is very small. 

The State called forensic odontologist
Dr. Brumit to testify regarding the marks on the victim’s chest.  Brumit, like
any other potential expert, was forced to rely on the photographs taken by
Sims.  According to Brumit, because there was no ruler or scale in the photographs,
she could not do a detailed analysis.  She could only say that the mark was
“possibly a bite mark” but she could not say it with any certainty.  She also testified
that without a scale, she could not measure the radius to make any sort of
comparative analysis with a given mouth.

Given the facts and the testimony
presented, we cannot say that the trial court abused its discretion in refusing
to appoint another forensic odontologist.  West failed to provide the trial
judge with the necessary information to justify the appointment of an
additional expert to analyze the marks on the victim’s chest.  Robertson v.
State, 21 S.W.3d 554, 557 (Tex. App.—Waco 2000 pet. ref’d).  West’s third
issue is overruled.  

Motion for New Trial

In his fourth and fifth issues, West
asserts that the court abused its discretion by failing to grant his motion for
new trial based on newly discovered evidence—the police dispatch reports—and alternatively
that the “ends of justice” required a new trial based on the discovery of the
dispatch reports.  In order to obtain a new trial upon "newly
available" evidence, the following elements are required:           

                                
(1)  the newly
discovered evidence was unknown to the movant at the time of trial; 

                                
(2)  the movant's
failure to discover the evidence was not due to his want of diligence; 

                                
(3)  the evidence is
admissible and not merely cumulative, corroborative, collateral or impeaching;
and 

                                
(4)  the evidence is
probably true and would probably bring about a different result in another
trial.

 

Keeter v. State, 74 S.W.3d 31, 36-37 (Tex. Crim. App.
2002); Ashcraft v. State, 918 S.W.2d 648, 653 (Tex. App.—Waco 1996, pet.
ref'd) (citing Moore v. State, 882 S.W.2d 844, 849 (Tex. Crim. App.
1994)).  The granting of a motion for new trial lies within the discretion of
the trial court.  We do not substitute our judgment for that of the trial court
but rather decide whether the trial court's decision was arbitrary or
unreasonable.  Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). 
Motions for new trial on grounds of newly discovered evidence are not favored
and are viewed with great caution.  Drew v. State, 743 S.W.2d 207, 225
(Tex. Crim. App. 1987); Frank v. State, 183 S.W.3d 63, 71 (Tex.
App.—Fort Worth 2005, pet. ref'd); Ashcraft, 918 S.W.2d at 653.

Because the police dispatch reports were
available to him before trial and witnesses accurately testified to the
substance of the reports during trial, West cannot establish the second and
third factors required to show that the trial court abused its discretion in
denying his motion for new trial.  Additionally, because the time frame of the
police reports was presented at trial, we cannot say that the interests of
justice required a new trial on this premise.  We overrule West’s fourth and
fifth issues.   

Factual Sufficiency

            In his sixth issue, West
challenges the factual sufficiency of the evidence to support his conviction. 
Specifically he argues that because the jury found him not guilty on three
counts, the evidence must be insufficient on the remaining counts.  

In a factual insufficiency review, we
ask whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder's verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
“The court reviews the evidence weighed by the jury that tends to prove the existence
of the elemental fact in dispute and compares it with the evidence that tends
to disprove that fact.”  Johnson, 23 S.W.3d at 7 (quoting Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).  The appellate court
“does not indulge in inferences or confine its view to evidence favoring one
side of the case.  Rather, it looks at all the evidence on both sides and then
makes a predominantly intuitive judgment. . . .”  Id. (quoting William
Powers and Jack Ratliff, Another Look at “No Evidence” and “Insufficient
Evidence,” 69 Texas L. Rev. 515, 519 (1991)).  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called “thirteenth juror” to review the factfinder’s
weighing of the evidence and disagree with the factfinder’s determination.  Watson,
204 S.W.3d at 416-17.

West essentially argues that because the
jury did not believe the victim’s testimony on three counts, her testimony was
not credible on the remaining counts.  However, the jury is the exclusive judge of the facts, the
credibility of the witnesses, and the weight to be given to the witnesses’
testimony.  Jaggers v. State, 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (citing Penagraph v. State, 623 S.W.2d 341,
343 (Tex. Crim. App. 1981)).  The jury may believe all, some, or none of any
witness’s testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986); Jaggers, 125 S.W.3d at 670.  As the reviewing court, we
“should not substantially intrude upon the jury’s role as the sole judge of the
weight and credibility of witness testimony.”  Vasquez v. State, 67
S.W.3d 229, 236 (Tex. Crim. App. 2002).  Irrespective
of that, West has not shown any reason to set aside the jury’s verdict.  We
have reviewed the record and find the evidence sufficient to support the
conviction.  We overrule his sixth issue.  

Admission of Evidence

The State introduced statements made by
West to the victim, which were overheard by her friends.  Two friends were
spending the night at the victim’s house when she called West and put him on a speakerphone. 
Both friends testified that they heard West moaning and that the entirety of
the conversation was sexual in nature.  Later, West attempted to introduce the
testimony of his roommate Grier who also claims to have heard the phone call
between West and the victim.  Grier testified that he did not hear West moan
and that the conversation was not sexual in nature.  When West began to ask
Grier questions about specific statements that West allegedly made, the State
objected to hearsay.  In response to the State’s hearsay objection, West stated
that the testimony Grier would give was impeachment testimony that was
justified because the victim’s friends were permitted to testify about the
telephone conversation.  The State’s objection was sustained.  In his final
issue, West argues his roommate Reginald Grier should have had the opportunity
to deny hearing him make specific statements of a sexual nature.

To preserve a complaint that the trial
court erroneously excluded evidence, the proponent of the evidence must make an
offer of proof or the substance of the excluded evidence must be apparent from
the context.  See Tex. R. Evid.
103(a)(2); Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (per
curiam); Haygood v. State, 127 S.W.3d 805, 812 (Tex. App.—San Antonio
2003, pet. ref’d); Guidry v. State, 121 S.W.3d 849, 853 (Tex.
App.—Beaumont 2003, no pet.).  Because West did not make an offer of proof and
the substance of the testimony at issue is not apparent from the context, his
seventh issue presents nothing for review.  Id.  Accordingly, we
overrule his final issue.

Conclusion

Having overruled all of West's issues,
we affirm the trial court's judgment.  

 

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Affirmed 

Opinion
delivered and filed December 3, 2008

Do not publish

[CRPM]