

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00237-CR

**DAMON ASBERRY,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2007-1625-C2

## MEMORANDUM  OPINION

Damon Asberry was convicted by a jury of murder.  TEX. PEN. CODE ANN. § 19.02(b) (Vernon 2003).  The jury assessed punishment at imprisonment for life in the Texas Department of Criminal Justice – Institutional Division.  TEX. PEN. CODE ANN. § 12.32 (Vernon 2003).  Asberry complains that the trial court erred by denying his request for a court-appointed expert and investigator, by denying challenges for cause to strike members of the jury panel, by allowing the admission of testimony of extraneous offenses, and by failing to allow him to make objections outside of the presence of the jury.  Because we find that the motion requesting the investigator and

expert were deficient, that the issue of Asberry's challenges for cause was not properly preserved, that the trial court did not abuse its discretion in the admission of extraneous offense testimony of Kelly and Gomez, that the admission of the firebomb extraneous offense was waived, and that the trial court did not abuse its discretion by refusing to conduct a hearing outside of the presence of the jury regarding the firebomb extraneous offense, we affirm the judgment of the trial court.

*Denial of Request for Expert and Investigator*

Asberry complains of the trial court's denial of his motions to have an investigator appointed to interview witnesses and an expert appointed to examine the DNA evidence in his case. We review a trial court's ruling on a motion to obtain an expert under an abuse of discretion standard. *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998). An indigent defendant has a right to a court appointed expert under certain circumstances.[1] *See Ake v. Oklahoma*, 470 U.S. 68, 74, 105 S.Ct. 1087, 1091-92, 84 L.Ed.2d 53 (1985). The defendant must make a preliminary showing that the expert assistance is necessary to address a significant issue at trial. *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996). In doing so, he must offer more than "undeveloped assertions that the requested assistance would be beneficial." *Id*.

Asberry's motions, however, were insufficient to establish his need for an investigator or a DNA expert. In cases holding that a sufficiency showing was not made under *Ake*, the defendant typically has failed to support his motion with (1)

---

[1] The State argues that because Asberry's trial counsel was retained, he was not entitled to appointment of an investigator or expert. However, it is unnecessary for us to reach this issue due to our holding regarding the deficiencies in Asberry's motion.

affidavits or other evidence in support of his defensive theory, (2) an explanation as to what his defensive theory was and why expert assistance would be helpful in establishing that theory, or (3) a showing that there was reason to question the State's expert and proof. *Rey v. State*, 897 S.W.2d 333, 341 (Tex. Crim. App. 1995). Asberry's motions fail to meet any of the three requirements. *See id.; see also Williams v. State*, 958 S.W.2d 186, 193-94 (Tex. Crim. App. 1997) (a defendant needs to offer affidavits or 'evidence' in order to prevail). Asberry did not attach any affidavit, expert or otherwise, or any other evidence to support his motions, offering nothing more than counsel's undeveloped assertions. *See Williams*, 958 S.W.2d at 194-95 (motion seeking appointment of expert to evaluate history of drug abuse and abuse as a child on grounds that "these factors could excuse [his] conduct or be a factor in mitigation of punishment" was supported by expert affidavit); *see also Smith v. State*, 131 S.W.3d 928, 930 (Tex. App.—Eastland 2004, pet. ref'd) ("Appellant did not present any affidavits or evidence in support of his motion;" he "only offered his counsel's undeveloped assertions that appellant needed an expert."). Thus, Asberry failed to make a sufficient showing under *Ake*. *See Rey*, 897 S.W.2d at 341; *see also Smith*, 131 S.W.3d at 930. We overrule Asberry's issue number one.

*Challenges for Cause*

Asberry complains that the trial court erred in denying three challenges for cause during voir dire. The conduct of voir dire examination rests within the sound discretion of the trial court and only an abuse of discretion results in a reversal on

appeal.  *Whitaker v. State*, 653 S.W.2d 781, 781 (Tex. Crim. App. 1983); *Clark v. State*, 608 S.W.2d 667 (Tex. Crim. App. [Panel Op.] 1980).

In order to preserve error on denied challenges for cause, Asberry was required, on the record, to demonstrate that he: (1) asserted a clear and specific challenge for cause; (2) used a peremptory challenge on the (objectionable) veniremember; (3) exhausted all of his peremptory challenges; (4) requested additional strikes; (5) objected to the juror that sat on the jury; and (6) would have struck that juror with a peremptory strike if he had been allotted additional strikes.  *Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003); *Nelson v. State*, 848 S.W.2d 126, 134 (Tex. Crim. App. 1992).  It is necessary to preserve error that Asberry show that he was "forced to take an identified objectionable juror whom he would not otherwise have accepted had the trial court granted his challenge for cause or granted . . . additional peremptory strikes."  *Colella v. State*, 915 S.W.2d 834, 843 (Tex. Crim. App. 1995).  Asberry did make challenges for cause, used peremptory challenges on at least two of them, used all of his peremptory challenges, and requested additional peremptory challenges.  However, in the trial court, he did not object to a specific juror that sat on the jury, nor demonstrate that he would have struck that identified juror if given additional peremptory challenges.  Therefore, this issue has not been preserved and Asberry has waived his right to complain about the challenges for cause.  Issue number two is overruled.

*Admission of Extraneous Offenses*

Asberry complains in issues three and four that the trial court erred in allowing testimony regarding extraneous offenses.  When reviewing a trial court's ruling on the

admission of evidence, we apply an abuse of discretion standard of review. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id*. A discussion of the facts leading up to the admission of the challenged evidence is necessary to our discussion of these issues.

*Factual Background*

In the early morning hours of May 22, 2003, Bryan Daugherty stumbled to the apartment door of a friend in Lacy Lakeview and knocked on the door. A friend answered and discovered Daugherty covered in blood on the verge of collapse. Shortly thereafter, Daugherty became incoherent. He was unable to divulge what had happened to him to anyone. After emergency medical assistance arrived, Daugherty was taken to the hospital where he died shortly thereafter.

Upon investigation, drops of blood and a shoe with drops of blood on it were found in different locations at the apartment complex where Daugherty was discovered. There were no signs of an altercation and it was determined that it was highly unlikely that the apartment complex was the location of the attack. Daugherty resided in the complex, but no evidence was located inside his apartment.

After some investigation, it was determined that Daugherty had been with Asberry the evening and into the early morning hours before he died. Daugherty and Asberry had been seen together several times over the course of the weeks leading up to the murder. There were allegations that Daugherty and Asberry had been together that day smoking marijuana and cocaine, and that Asberry's intent was to have sexual

relations with Daugherty, but Daugherty did not agree. Asberry did not go to work for a short time after the offense, but told people at his job that the police were after him for the murder prior to any interview with the police.

The vehicle Asberry was alleged to have been driving that night was a 1990 blue Mazda. That vehicle belonged to Asberry's brother, who gave law enforcement written and verbal consent to search and then to impound the vehicle. When the vehicle was initially opened, the officer described smelling a foul odor like rotting meat, found that the back seat was wet, and when he touched the seat, the residue was soapy and reddish colored. A friend of Asberry's went with him the week after the murder to detail a car, which turned out to be the Mazda. However, they only cleaned the inside of the vehicle, and Asberry cleaned the back seat area.

Shortly after being impounded, the vehicle was stored at an impound lot where someone threw a type of homemade firebomb or "Molotov cocktail" near it, but it did not destroy the vehicle. The police were unable to determine who committed that offense, but believed it was Asberry.

DNA testing was conducted on the seat cushion and other portions of the Mazda. This did not return any conclusive evidence linking Asberry to the crime, but also did not exclude him.

Another individual, Brandon Trotter, had threatened to kill Daugherty shortly before his death due to an incident that had occurred in Austin. When initially interviewed, Trotter orally admitted to killing Daugherty. However, it was shortly discovered that Trotter was in Arlington during that time and could not have

committed the murder. Both Trotter and his mother confirmed this at the trial. Trotter is a convicted felon and was incarcerated at the time of trial.

The case was eventually referred to the Texas Rangers as a cold case. The investigation was reopened, and Asberry was arrested for committing the murder. While in jail pending trial, Asberry allegedly confessed to the crime separately to two other inmates, Jason Donaldson and Regan Preatto. Both inmates stated that Asberry had stabbed Daugherty in an altercation that took place on a remote road near Asberry's home. Asberry stabbed Daugherty because Daugherty refused Asberry's sexual advances. Both Donaldson and Preatto were convicted felons who were incarcerated and presently facing serious new charges. Asberry attempted to impeach them by portraying them as self-motivated and untrustworthy. Asberry produced other evidence to attempt to show that it would have been improbable, if not impossible, for those conversations to have taken place as described due to a lack of privacy in the cells in the jail. Additionally, Asberry attempted to prove Donaldson was allegedly a member of an Aryan gang and Asberry is not white, making it highly unlikely that Donaldson would have communicated with Asberry at all, much less about the offense.

Asberry's mother attempted to provide an alibi defense for Asberry by testifying that he was at home at a time that made it impossible for him to have committed the offense.

*Texas Rule of Evidence 403*

In issue three, Asberry complains that the trial court erred by allowing the State to present the testimony of two witnesses in rebuttal regarding other sexual offenses alleged to have been committed by Asberry pursuant to Texas Rule of Evidence 403. Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

Although the Texas Rules of Evidence are intentionally slanted toward the inclusion of all relevant evidence, Rule 403 gives the trial court considerable discretion to exclude evidence when it appears to that individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule. *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007); *see Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1991) (op. on orig. submission); 810 S.W.2d at 391-92 (op. on reh'g); *Johnson v. State*, 263 S.W.3d 405, 426-427 (Tex. App.—Waco 2008, pet. ref'd).

In a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely

repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *see State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Montgomery*, 810 S.W.2d at 389-90 (op. on reh'g). "The rule gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness' testimony and its impact upon the jury, and to conduct the necessary balancing." *Winegarner*, 235 S.W.3d at 791.

The two witnesses, Christy Kelly and Freddy Gomez, were called by the State during rebuttal. Christy Kelly testified that she had been a friend of Asberry's for many years and that on at least 100 occasions, she had aided Asberry in bringing in male victims between ages 18-24 that they generally located in or around the TSTC campus where Asberry was a student and worked. Kelly, Asberry, and the male would drive around and end up near Groesbeck, where Asberry's mother resided. During this time, they would ply the male with alcohol, marijuana, and cocaine. Kelly and Asberry would stage some car problem that would make it impossible to drive the male home. Kelly would not participate in anything beyond that; however, she did see Asberry carry an unconscious male into his home one time. Asberry also bragged to Kelly about having feces on him and victims throwing up on him during sexual encounters with them. Some of the males were straight and others were gay. Kelly did not believe that all of the encounters were consensual. Kelly stated that this occurred virtually every time they were together during a period of several years. Kelly informed the district attorney's office of this in a letter she sent while incarcerated because she felt guilty

about her participation with Asberry. She was a month away from her release date, and therefore did not gain anything by her testimony.

Freddy Gomez was a new student at TSTC and went to the financial aid office to ask a person to give him a ride to the bank so he could cash a check. The person he asked for a ride introduced him to Asberry, who agreed to give him a ride. After going to the bank, Asberry offered to purchase a bottle of alcohol for them to share. Since Gomez was a minor at the time, he was unable to purchase alcohol himself. Asberry also gave Gomez marijuana and cocaine. After driving around, they ended up in Groesbeck, where Asberry's vehicle then started leaking water and the engine started smoking. Asberry and Gomez went to Asberry's mother's house to spend the night. They continued drinking and using drugs. Gomez went to bed in Asberry's room. He awakened to find Asberry touching his testicles. Gomez told Asberry to stop. Asberry then masturbated next to him. Gomez got into a verbal and then physical altercation with Asberry when he refused to participate with Asberry. Gomez threatened to wake Asberry's mother who was asleep in the house, which made Asberry stop. This occurred approximately one week before Daugherty's murder.

Asberry objected that the evidence was not relevant, that it was not admissible pursuant to Rule of Evidence 404(b), and that its probative value was outweighed by its prejudicial effect. The trial court, after hearing the proposed testimony outside of the presence of the jury, ruled that the evidence would be admissible for proof of identity and modus operandi. The trial court agreed to give the jury a limiting instruction to this effect. However, in front of the jury, the trial court gave the limiting instruction

after the testimony of Kelly but added proof of motive as a basis for the jury to consider the evidence that they had just heard. Asberry did not object to this instruction. The trial court did not give any limiting instruction before the testimony of Kelly or after the testimony of Gomez. Asberry's sole complaint on appeal regarding the admission of the testimony of Kelly and Gomez is based on Texas Rule of Evidence 403.

*Probative Value*

Asberry agrees that the testimony of the two witnesses was highly probative for the State. However, Asberry contends that the State's need for this evidence was not great. However, the best evidence that the State had to connect Asberry to the offense at the end of their case-in-chief was the fact that Asberry had been with Daugherty until shortly before the murder, the statements of the two seasoned felons, whose credibility had been strongly attacked, and DNA evidence in the vehicle which was not particularly strong. Therefore, the State did have a need for this evidence. Additionally, the decision by the State to introduce this evidence was made after Asberry presented his case, and was based on the challenges that Asberry had raised to the above evidence.

*Unfair Prejudice*

An extraneous sexual assault can certainly present the danger of the jury making a decision on an improper, emotional basis. *See Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002*); Montgomery v. State*, 810 S.W.2d 372, 397 (Tex. Crim. App. 1990) (op. on reh'g). But the presentation of Kelly and Gomez's testimony did not take such a great amount of time as to confuse or distract the jury from the main issue of the case.

Kelly's direct examination consumed less than 9 pages and Gomez's direct examination consumed less than 8 pages of the reporter's record of a two and a half-day trial on guilt/innocence. There is nothing to suggest that the jury was not equipped to evaluate the probative force of the evidence, and as stated previously, the evidence was not unduly lengthy and did not present unnecessary cumulative evidence. We find that the trial court's admission of the evidence is not outside of the zone of reasonable disagreement. We overrule Asberry's issue three.

*Texas Rule of Evidence 404*

In issue four, Asberry complains that the trial court erred by allowing the State to present testimony regarding an attempted destruction of the blue Mazda while it was still impounded pursuant to Texas Rule of Evidence 404(b). Texas Rule of Evidence 404 provides that "[e]vidence of other crimes, wrongs or acts" than that on trial: "is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as . . . knowledge [or] identity . . . ." TEX. R. EVID. 404(b). "[C]riminal acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under Rule 404(b) as showing 'consciousness of guilt.'" *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996) (op. on reh'g) (quoting, *e.g., Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. [Panel Op.] 1983)); *see, e.g., Gonzalez v. State*, 117 S.W.3d 831, 842 (Tex. Crim. App. 2003); *Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App.— Waco 2007, pet. ref'd).

Asberry's objection is based on the inability of the State to link the attempted firebombing of the impounded vehicle to Asberry. The State's theory at trial apparently was that the relevancy of the evidence of the firebombing of the vehicle where Asberry attached Daugherty was conditioned upon the introduction of evidence that would permit a jury to find beyond a reasonable doubt that Asberry firebombed the car in an effort to destroy the evidence against him, demonstrating a "consciousness of guilt." *See* TEX. R. EVID. 104(b).

The situation before us is analogous to the one presented in *Fuller v. State*, 829 S.W.2d 191, 196-99 (Tex. Crim. App. 1992). In *Fuller*, a capital murder case, the defendant objected to the introduction at the punishment phase of testimony describing the beliefs and activities of the Aryan Brotherhood, a prison gang. *Id*. at 196. The defendant urged that the evidence was irrelevant because the State had not shown that he was a member of the gang or subscribed to any of its beliefs. *Id*. The trial court overruled the objection and admitted the testimony, but the State never made the connection between the Aryan Brotherhood and Fuller. *Fuller*, 829 S.W.2d at 197-98. The Court of Criminal Appeals held that without probative evidence that the defendant was a member of the Aryan Brotherhood or subscribed to its beliefs, the previously admitted testimony concerning the gang's beliefs and activities in the abstract "was vulnerable to a motion to strike at the conclusion of the State's case, even if it was not objectionable on relevancy grounds when offered." *Id*. at 198. The Court went on to hold that it is not the trial court's duty to notice whether conditionally admitted evidence is eventually "connected up"; rather, the objecting party must re-urge his

objection after all the proof is in, ask that the offending evidence be stricken, and request that the jury be instructed to disregard it. *Id*. at 198-99. Because Asberry did not do this, the error was not preserved for appeal. *See Id. See also Fischer v. State*, 268 S.W.3d 552, 557 (Tex. Crim. App. 2007) (motion to strike at the conclusion of evidence necessary to preserve error in admission of extraneous conduct). We overrule Asberry's issue four.

*Hearing Outside of Jury's Presence*

Asberry complains that the trial court erred by refusing to allow Asberry to make his objections regarding the extraneous firebombing outside of the presence of the jury. Texas Rule of Evidence 104(c) requires hearings on preliminary matters other than those regarding the admissibility of a confession to be held outside of the presence of the jury "when the interests of justice so require..." *See* TEX. R. EVID. 104(c). It appears from the record that trial counsel for Asberry made an objection at the bench that was not recorded by the court reporter, which was apparently overruled. Asberry then objected when the State asked the same question of the witness and requested to be able to make his objections to the firebomb evidence on the record outside of the presence of the jury.

The trial court has the responsibility to determine the threshold issue of whether an extraneous offense is relevant after an appropriate objection. *See Mitchell v. State*, 931 S.W.2d 950, 953-54 (Tex. Crim. App. 1996); *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). As the exclusive judge of the facts, the jury then determines whether or not the State has proved the extraneous

offenses beyond a reasonable doubt, and they should be so instructed when requested. *Mitchell*, 931 S.W.2d at 954.

There is no requirement that this threshold determination be made by the court following a formal hearing as opposed to some other form of preliminary review. *Mann*, 13 S.W.3d at 94. The trial court may determine whether there is sufficient evidence through an oral or written proffer of evidence, motions, pretrial hearings, and the trial, including any bench conferences. *See Mann*, 13 S.W.3d at 93-95; *Welch v. State*, 993 S.W.2d 690, 697 (Tex. App.—San Antonio 1999, no pet.).

Asberry contends that the trial court's failure to have a hearing outside the jury's presence required him to object to the testimony, which would prejudice the jury by hearing the substance of the evidence prior to the judge's ruling on its admissibility. However, in his objection to the trial court on the record, he did not refer in any manner to a firebomb or what specific testimony he believed to be forthcoming to which he objected. Additionally, the jury was instructed in the charge that they were only to consider any extraneous offenses if the State had proved them beyond a reasonable doubt. On appeal, we generally presume the jury followed the trial court's instructions as presented in the charge. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). To rebut this presumption, Jones is required to point to evidence the jury failed to do so. *Id.* Asberry has made no such showing. We overrule issue five.

*Conclusion*

We find that any error regarding the denial of an expert and investigator, the denial of Asberry's challenges for cause, and the exclusion of the firebomb evidence

was not properly preserved.  We find that the trial court did not err in the admission of the extraneous offense testimony of Kelly and Gomez.  We find that the trial court did not err in denying Asberry's request for a hearing outside of the presence of the jury.  We affirm the conviction.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed November 4, 2009
Do not publish
[CRPM]