

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00239-CR

**GRADY RODRIGUEZ, JR.,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. F47110**

## MEMORANDUM OPINION

A jury found Appellant Grady Rodriguez, Jr. guilty of two counts of delivery of a controlled substance, namely methamphetamine, in an amount of one gram or more but less than four grams, and assessed his punishment, enhanced by a prior felony conviction, at forty-eight years' imprisonment and a $1,000 fine for each count, to be served concurrently. This appeal ensued.

### Background

Cleburne Police Investigator Mark Goetz and former Alvarado Police Officer

Nick Garrett, as members of the Stop The Offender Program (STOP) Special Crimes Unit, were conducting an undercover operation in which a confidential informant (CI) was to attempt to purchase methamphetamine at Manuel Gonzales's house. The CI testified that he had previously been pulled over with drugs after leaving Gonzales's house and that he had made a deal with the STOP Special Crimes Unit to perform three controlled buys in exchange for them not pursuing the drug charges against him.

Investigator Goetz testified that on May 15, 2012, the CI was supposed to purchase an 8-ball (3.5 grams or 1/8 of an ounce) of methamphetamine at an anticipated cost of $250 from Gonzales. Investigator Goetz stated that before the CI went to Gonzales's house, the CI had placed a telephone call to Gonzales to negotiate the anticipated transaction. The CI was then given various instructions on how to conduct himself and was provided a covert audio/video recorder, an electronic audio transmitter, and $280. Investigator Goetz searched the CI's vehicle and its contents while Officer Garrett searched the CI's person and any personal effects he had on his person. Neither Investigator Goetz nor Officer Garrett found any contraband in their searches, and the CI testified that he was not hiding any drugs on himself or in his vehicle. The CI then drove directly to Gonzales's house. Investigator Goetz and Officer Garrett followed him part of the way and then relied upon the audio transmitter to monitor what was happening.

An audio/video recording of the CI's drive to Gonzales's house, the alleged transaction, and the CI's return drive to the location where he again met with Investigator Goetz and Officer Garrett was admitted into evidence. The CI testified that

when he arrived at Gonzales's house, Rodriguez greeted him at the door. The CI went inside, and Rodriguez informed Gonzales that the CI was there. When Gonzales came inside the house, the CI gave him $250. Gonzales then asked Rodriguez to give the CI another 8-ball. Rodriguez took out an 8-ball of methamphetamine and gave it to Gonzales, who then gave it to the CI.

The CI left Gonzales's house, and Investigator Goetz testified that he and Officer Garrett followed him to a predetermined location. Officer Garrett testified that at the predetermined location, he collected the drug evidence and the remaining $30 from the CI. Investigator Goetz stated that he and Officer Garrett then debriefed the CI as to what happened at the house and retrieved all the recording devices. Investigator Goetz and Officer Garrett also again conducted searches of the CI's vehicle and its contents and the CI's person and any personal effects he had on his person. Investigator Goetz and Officer Garrett did not find any contraband in their searches.

Investigator Goetz testified that on May 17, 2012, the CI made another purchase of methamphetamine. Investigator Goetz and Officer Garrett again met with the CI at a predetermined location. Investigator Goetz stated that before the CI went to Gonzales's house, the CI again initiated a telephone call to Gonzales to confirm the anticipated transaction. The CI was then again given various instructions on how to conduct himself and was again provided a covert audio/video recorder, an electronic audio transmitter, and $250. Investigator Goetz searched the CI's vehicle and its contents while Officer Garrett searched the CI's person and any personal effects he had on his person. Neither Investigator Goetz nor Officer Garrett found any contraband in their

searches. The CI then drove directly to Gonzales's house. Investigator Goetz and Officer Garrett followed him part of the way and then relied upon the audio transmitter to monitor what was happening. Investigator Goetz stated that by this time, they had also installed a telephone-pole camera in the area, which allowed them to directly monitor activities at Gonzales's house from off-site.

An audio/video recording of the CI's drive to Gonzales's house, the alleged transaction, and the CI's return drive to the location where he again met with Investigator Goetz and Officer Garrett was admitted into evidence. The CI testified that as soon as he went inside Gonzales's house, he paid Gonzales the $250. The CI stated that Gonzales had been expecting him to buy another 8-ball of methamphetamine. The CI and Rodriguez then got into the CI's vehicle and drove around the block to Danielle Rodriguez's house. When they arrived at Danielle's house, Rodriguez got out of the car and went to the door, but Danielle called him over to the window. Rodriguez went over to the window and got an 8-ball of methamphetamine from Danielle. Rodriguez then got back into the vehicle and handed the CI the drugs. The CI then drove Rodriguez back around the block and dropped him off at Gonzales's house.

The CI left Gonzales's house, and Investigator Goetz testified that he and Officer Garrett again followed the CI to a predetermined location. At the predetermined location, Investigator Goetz took possession of the drug evidence. Investigator Goetz and Officer Garrett then debriefed the CI as to what had happened. Investigator Goetz and Officer Garrett also again conducted searches of the CI's vehicle and its contents and the CI's person and any personal effects he had on his person. Investigator Goetz

and Officer Garrett did not find any contraband in their searches.

## Lesser-Included-Offense Instruction

In his first issue, Rodriguez contends that, as to Count Two, which involved the May 17, 2012 transaction, he should have received an instruction on the lesser-included offense of possession of a controlled substance.

A claim of jury-charge error is reviewed using the procedure set out in *Almanza*. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The first step is to determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Only if we find error, do we then analyze that error for harm. *Id.*

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). First, the lesser offense must be a lesser-included offense of the charged offense as defined by article 37.09 of the Code of Criminal Procedure. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). Article 37.09 provides:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09.

Second, there must be some evidence in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672-73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or whether it conflicts with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Possession of a controlled substance can be proved by the same facts necessary to establish a delivery of a controlled substance. *Jones v. State*, 586 S.W.2d 542, 545 (Tex. Crim. App. [Panel Op.] 1979). Possession of a controlled substance may therefore be a lesser-included offense of delivery of a controlled substance, and so, the first step of the analysis would be satisfied. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09. However, there is no evidence in the record from which a rational jury could acquit Rodriguez of delivery of a controlled substance in Count Two while convicting him of possession of a controlled substance in Count Two. Rodriguez argues that the evidence from which a

jury could convict him of only possession of a controlled substance in Count Two is the CI's testimony that Rodriguez went to Danielle's house, took the 8-ball of methamphetamine, and brought it back to the CI's vehicle. But the only context in which the CI testified about Rodriguez possessing methamphetamine on May 17, 2012 was in the context of Rodriguez delivering the methamphetamine to him. The CI's testimony was that Rodriguez got the 8-ball of methamphetamine from Danielle for the purpose of delivering it to him and that Rodriguez did in fact give the 8-ball of methamphetamine to him when he got back in the vehicle. The second step of the analysis cannot by satisfied. *See Moore*, 969 S.W.2d at 8.

The trial court properly overruled Rodriguez's request for an instruction on the lesser-included offense of possession of a controlled substance as to Count Two. *See id.* We overrule Rodriguez's first issue.

### Unanimous Verdict

In his second issue, Rodriguez contends that the trial court erred by submitting a jury charge that did not require jury unanimity because the application paragraphs in the guilt/innocence charge instructed the jury that it could find him guilty if it found that he, "acting alone or as a party," made the deliveries of methamphetamine. As with Rodriguez's first issue, the first step is to determine whether there is error in the charge. *Ngo*, 175 S.W.3d at 743.

"Both Article V, Section 13 of the Texas Constitution and Article 36.29(a) of the Texas Code of Criminal Procedure require unanimous jury verdicts in all felony cases." *Leza v. State*, 351 S.W.3d 344, 356 (Tex. Crim. App. 2011); *see* TEX. CONST. art. V, § 13; TEX.

CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2013). There is no general requirement, however, that the jury reach unanimous agreement on preliminary factual issues that underlie the verdict, such as the manner and means by which one offense was committed. *See Schad v. Arizona*, 501 U.S. 624, 632, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555 (1991) (plurality); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

The Court of Criminal Appeals observed in *Leza* that "it would be plainly absurd to require the jury to acquit the accused unless it can unanimously determine his status as a principal actor or a party and, if the latter, what his exact party accountability might be." *Leza*, 351 S.W.3d at 357. The court explained that the provisions of section 7.02 of the Penal Code, which define party liability, do not contain elements of the underlying offense, but rather "describe alternative manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense." *Id.*; *see* TEX. PENAL CODE ANN. § 7.02 (West 2011). Thus, if the jury determines that the accused is guilty of every constituent element of the alleged penal offense—"*either* as a principal actor *or* under some theory of party liability"—the jury is not required to unanimously determine what his "precise role" was in the offense. *Leza*, 351 S.W.3d at 357.

In this case, Rodriguez was charged with one offense in each of Counts I and II— delivery of a controlled substance, namely methamphetamine, in an amount of one gram or more but less than four grams. The alleged theories of culpability as principal or party were merely alternate methods or means by which Rodriguez allegedly committed the one charged offense. *See id.* And the jury was not required to be

unanimous concerning the manner in which Rodriguez was culpable—as the principal actor or as a party to the offense. *See id.* We therefore hold that there was no error in the jury charge and overrule Rodriguez's second issue.

## Admissibility of Photographs

Before trial, Investigator Goetz took photographs of Rodriguez's tattoos. The State offered those photographs into evidence, State's Exhibit Nos. 15-22 and 24-36. Rodriguez made several objections to the admission of the photographs in relevant part as follows:

> [Defense Counsel]: ….
>
> And number two, number two, Judge, you can see, especially on that first photo, you can see his - - he's wearing a prison uniform, so that's going to impermissibly suggest to the Jury that he is in custody or has been in custody. I - - and would therefore be inflammatory."
>
> ….
>
> [Defense Counsel]: Number three, we would object that it shows that he's wearing prison clothes in some of these and that was - - will be inflammatory to the Jury.

The trial court overruled Rodriguez's objections and admitted the photographs into evidence. In his third issue, Rodriguez contends that the trial court erred by admitting the photographs of him in jail clothes, *i.e.*, State's Exhibit Nos. 27, 28, 35, and 36.

An objection to evidence as "inflammatory" is effectively an objection under rule 403 that the probative value of the evidence is substantially outweighed by its prejudicial effect. *See Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993); *Caballero v. State*, 919 S.W.2d 919, 921 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

We review the trial court's ruling on a rule 403 objection for an abuse of discretion. *See*

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

When a trial court balances the probative value of the evidence against its danger

of unfair prejudice, a presumption exists that the evidence will be more probative than

prejudicial. *Montgomery*, 810 S.W.2d at 389.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (quoting

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted)).

*Probative force of the evidence*: Rodriguez does not argue in his brief that the

photographs were irrelevant but only that they were inflammatory. The State argues

that the photographs were relevant in proving the identity of Rodriguez as the person

seen in the videos delivering the methamphetamine. The four photographs in question

show the tattoos on one of Rodriguez's arms. In the audio/video recording from May

17, 2012, the arms of the person alleged to be Rodriguez are visible and do show a

number of tattoos. On the other hand, when Investigator Goetz identified at trial the

photographs showing tattoos that were also depicted in the audio/video recordings, he

did not mention any of the four photographs in question. The probative force of the

four photographs specifically is therefore uncertain.

Then again, Rodriguez's objection in the trial court did not single out the four photographs; rather, his objection was to the photographs of his tattoos altogether. Considering the photographs altogether, we conclude that they were indeed probative in establishing the identity of Rodriguez as the person seen in the videos delivering the methamphetamine. Investigator Goetz identified three photographs showing tattoos that were depicted in the audio/video recordings.

*Proponent's need for that evidence*: Again, Rodriguez does not argue in his brief that the photographs were irrelevant or that the State did not need the photographs, but only that the photographs were inflammatory. The only evidence showing that *Rodriguez* actually delivered methamphetamine was the audio/video recordings and the CI's testimony. Rodriguez challenged the credibility of the CI; therefore, the State did need evidence proving the identity of Rodriguez as the person seen in the videos delivering the methamphetamine.

*Tendency of evidence to suggest a decision on an improper basis*: Rodriguez argues that the photographs suggested a decision on an improper basis as follows:

> Admitting those photos over Appellant's objection was tantamount to forcing him to attend his trial in those same jail clothes because it was an impediment to the fairness of the factfinding process and because it invaded his right to a presumption of innocence. The result of the jury seeing those photos would have the exact same result of him being inside the courtroom in clothing which bears the indicia of incarceration.

We disagree. Each of the four photographs in question shows a small portion of Rodriguez's right leg covered with striped clothing. There is no indication that the

clothing is jail clothing. Rodriguez was neither handcuffed nor shackled in the photographs. Thus, the four photographs had limited potential to impress the jury in an irrational way. *See Hajjar v. State*, 176 S.W.3d 554, 561-62 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *Lovely v. State*, 894 S.W.2d 99, 102-03 (Tex. App.—Beaumont 1995, pet. ref'd).

*Jury confusion or distraction, undue weight, and amount of time or repetition*: These factors concern whether presentation of the evidence consumed an inordinate amount of time or was repetitious, and the evidence's tendency to confuse or distract the jury or to cause the jury to place undue weight on its probative value. *See Gigliobianco*, 210 S.W.3d at 641-42; *Newton*, 301 S.W.3d at 320. The testimony about the photographs in question was very brief. It was not repetitious, and we do not believe that it could cause jury confusion or distraction or cause the jury to give it undue weight.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the admission of State's Exhibit Nos. 27, 28, 35, and 36 and their probative value. We overrule Rodriguez's third issue.

**Hearsay**

In his fourth issue, Rodriguez contends that the trial court erred by admitting inadmissible hearsay. More specifically, Rodriguez complains, "During the direct

examination of [Investigator] Goetz, the State asked him about damning statements made by Manuel Gonzalez [sic], and video footage of the May 15th transaction was admitted with Gonzalez [sic] making hearsay statements on that video."

The relevant facts are as follows:  The State offered into evidence the audio/video recording from May 15, 2012 of the CI's drive to Gonzales's house, the alleged transaction there, and the CI's return drive to the location where he again met with Investigator Goetz and Officer Garrett.  Rodriguez objected, in part, at that point, "[W]e would object to any hearsay statements that are contained on this video, any statements of witnesses that are not going to be called."  The trial court overruled the objection, and the recording was admitted into evidence.  A portion of the recording was then played in open court.  At that time, Rodriguez again objected, "Judge, as not to interrupt the video while it's playing, may we have a running objection to any hearsay statements that are contained within the recording?"  The trial court replied, "Yes, sir."  After several more portions of the recording were played, during which Investigator Goetz also answered several questions, the following exchange took place:

> Q. [Prosecutor]  And can you explain for us what just transpired on the video?
>
> A. [Investigator Goetz]  Manuel Gonzales enters the residence and inquires if [the CI] had the $250.
>
> [Defense Counsel]:  Judge, I'm going to object to that as speculation and also he's referencing hearsay statements made on the tape, unless they plan to call Manuel Gonzales as a witness.
>
> THE COURT:  Overrule.
>
> [Prosecutor]:  Thank you.

You can proceed.

    A.    Manuel Gonzales inquires if [the CI] had the $250. [The CI] replies affirmatively. Manuel Gonzales then directs his attention to Grady Rodriguez and asks Grady if he has another ball, which is a common term for one-eighth of an ounce, 3.5 grams, an 8-ball or a ball. Then Grady Rodriguez presents his hands in a manner which is consistent with providing Manuel Gonzales with the requested item. Afterwards, Manuel Gonzales is heard saying, "There you go", whereby Manuel Gonzales is the person actually making the transfer to [the CI].

Hearsay complaints must be preserved with a timely and specific objection to the evidence. *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996); *see* TEX. R. APP. P. 33.1(a). When an exhibit contains both admissible and inadmissible evidence, the objection must specifically identify what portions are inadmissible to apprise the trial court of the exact objection, and to preserve a complaint. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995).

In this case, Rodriguez's hearsay objections to the audio/video recording from May 15, 2012 did not specifically identify what portion(s) of the recording to which his objections applied. Instead, Rodriguez objected generally to all hearsay statements made in the recording. Accordingly, Rodriguez has failed to preserve his hearsay complaints about the audio/video recording from May 15, 2012. Furthermore, in light of the foregoing conclusion and assuming without deciding that Rodriguez's hearsay objection to Investigator Goetz's testimony preserved that complaint for review, we conclude that any error in Investigator Goetz's testimony about what Gonzales said on the recording was cured because the audio/video recording of the May 15, 2012 transaction was admitted into evidence without proper hearsay objection. *See Lane v.*

*State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) ("'An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.'") (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). We overrule Rodriguez's fourth issue.

Having overruled all of Rodriguez's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Affirmed
Opinion delivered and filed August 28, 2014
Do not publish
[CRPM]